**EXHIBIT A**

2022 WL 3285275
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

LATRELL GILLETT, individually and on behalf of all others similarly situated, Plaintiffs,
v.
ZARA USA, INC. and INDITEX USA LLC, Defendants.

20 Civ. 3734 (KPF)
|
Filed 08/10/2022

### OPINION AND ORDER

KATHERINE POLK FAILLA United States District Judge

**\*1** Plaintiff Latrell Gillett, on behalf of himself and other hourly employees of the fashion retailer Zara, brought this class and collective action against his former employers Zara USA, Inc. and Inditex USA LLC (together, "Zara" or "Defendants"), asserting wage-and-hour claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 195, 198, 650-665. In particular, Plaintiff alleges that Defendants violated the overtime compensation provisions of the FLSA and the NYLL, as well as the NYLL's provisions regarding timely payment of wages, spread-of-hours pay, wage notices, and wage statements.

Defendants have moved to dismiss Plaintiff's state-law claim for untimely payment of wages pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff lacks Article III standing to bring this claim; the claim is preempted by federal labor law; and Section 191 of the NYLL does not create a private right of action for such a claim. For the reasons set forth below, the Court denies Defendants' motion to dismiss.

### BACKGROUND[1]

**A. Factual Background**
Zara is a fashion retailer, headquartered in New York, New York, that operates more than 95 stores throughout the United States. (Am. Compl. ¶¶ 2-3). From approximately March 2018 until August 16, 2019, Plaintiff was an employee at various Zara retail locations and was compensated on an hourly basis plus sales commissions. (*Id.* at ¶¶ 4, 5, 16, 59-60). More than a quarter of Plaintiff's job responsibilities were physical tasks, such as lifting and stacking shipment boxes, placing clothes on shelves, and price-tagging items. (*Id.* at ¶ 63). The majority of Zara's over 5,000 employees in the United States are, like Plaintiff, hourly workers, and they include stock associates, sales associates, and cashiers. (*Id.* at ¶¶ 1, 3).

Plaintiff alleges that Defendants' compensation policies for hourly workers violated state and federal wage-and-hour laws in several ways. Beginning with Defendants' policy regarding overtime compensation, Plaintiff alleges that Defendants failed to include hourly workers' commissions when calculating rates of overtime pay, as required by law. (Am. Compl. ¶¶ 6, 35). Defendants allegedly maintained this practice of short-changing hourly workers on their overtime pay, despite being faced with multiple lawsuits challenging this precise policy. (*Id.* at ¶¶ 41-43). As another potential violation of the wage-and-hour laws, Plaintiff alleges that when hourly employees worked more than 10 hours in a day, Defendants denied them the spread-of-hours pay to which they were entitled under New York law. (*Id.* at ¶¶ 10-12, 67). Plaintiff further alleges that Defendants paid hourly employees on a bi-weekly basis, as opposed to within seven calendar days after the end of the week in which the wages were earned, as New York law requires. (*Id.* at ¶¶ 8-9, 64). Finally, Plaintiff recounts that Defendants failed to furnish hourly workers with either a proper wage notice when they were hired or wage statements when they received their wages, as mandated by New York law. (*Id.* at ¶¶ 57, 68-69).

**\*2** Although these documents are neither explicitly mentioned nor directly referenced in the Amended Complaint, Defendants seek dismissal of Plaintiff's untimely wage claim based on a series of collective bargaining agreements (collectively, the "CBAs") that Zara USA, Inc. entered into with Local 1102 of the Retail, Wholesale, and Department Store Union District Council, United Food and Commercial Workers (the "Union"), which CBAs purportedly governed the terms and conditions of Plaintiff's employment, as well as that of many others in Plaintiff's putative class of New York hourly workers. (*See* Freedberg Decl., Ex. A-E).[2] Defendants cite several provisions of the CBAs as bearing on their arguments for dismissal. (Def. Br. 4-5). Article 1 recognizes that the Union shall be the "sole and exclusive bargaining representative" of "[a]ll full-time and part-time Sales Associates, Stock Associates, and

Cashiers (and any other substantially identical positions) employed by the Employer in the above referenced retail stores." (Manhattan CBA Art. 1.1, 1.2). The CBAs do not apply to all other employees, such as managers, supervisors, guards, assistant head cashiers, or employees not situated in retail stores. (*Id.*, Art. 1.2).

Article 9 pertains to management rights, specifically Defendants' "right to direct and control [their] policies subject to the obligations of this Agreement." (Manhattan CBA Art. 9). This provision makes clear that Defendants may "make or change policies, rules or regulations as long as such policies, rules or regulations are not inconsistent with the provisions of this Agreement." (*Id.*). Defendants also "have the right to modify any policy, rule or regulation in order to comply with any federal, state, or local law, ordinance or government directive, whether or not doing so may otherwise violate this Agreement." (*Id.*).

Article 25 governs shop standards and provides that Defendants "shall maintain an accurate method of recording hours of work, and the employees shall cooperate with the time-keeping processes so established." (Manhattan CBA Art. 25.1). Further, Article 25 establishes that "[e]mployees may elect to receive their pay by having the Company direct deposit to the employee's designated account." (*Id.*, Art. 25.4). The CBA says nothing about the timing of paydays.

Finally, the CBAs contain separability clauses, providing that "[i]f any provisions or parts thereof of this Agreement are in conflict with any applicable state or federal law or regulation, such provision shall be deleted from this Agreement or shall be deemed to be in effect only to the extent permitted by such law or regulation." (Manhattan CBA Art. 27). "In the event that any provision of this Agreement is thus rendered inoperative[,]" Article 27 states that "the remaining provisions shall nevertheless remain in full force and effect." (*Id.*).

**B. Procedural Background**
Plaintiff initiated this action on May 14, 2020, by filing the underlying Complaint asserting federal and state wage-and-hour claims on behalf of himself and a putative collective and class of Zara hourly workers. (Dkt. #1). Defendants answered the Complaint on July 20, 2020 (Dkt. #12), after which this matter was referred to the Court-annexed mediation program for FLSA cases (Dkt. #15). Approximately one month after the referral, on August 26, 2020, Plaintiff wrote to the Court to relate that the parties did not believe that mediation would be feasible prior to the Court's resolution of Plaintiff's anticipated motion for conditional certification pursuant to 29 U.S.C. § 216(b). (Dkt. #17). At the parties' request, the Court withdrew the case from the mediation program and set a briefing schedule for Plaintiff's motion for conditional certification. (Dkt. #18, 23).

**\*3** By Opinion and Order dated May 3, 2021, the Court granted Plaintiff's motion for conditional certification as to a collective composed of hourly workers employed at Zara retail stores from May 14, 2017, through July 1, 2019, who were not paid adequate overtime. (Dkt. #37). *See Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2021 WL 1731836 (S.D.N.Y. May 3, 2021). The Court keyed the beginning of the notice period to the three-year timeframe prior to the filing of the Complaint, on the understanding that timeliness challenges to any individual plaintiff's claims would be resolved at a later stage in the proceedings. (*Id.* at 16-17). Two weeks after the Court conditionally certified the collective, on May 17, 2021, Defendants moved for reconsideration of the Court's conditional certification order, arguing that the Court had erred in setting the opt-in and notice periods based on the date the Complaint was filed, rather than the date the Court issued its ruling on Plaintiff's conditional certification motion. (Dkt. #39-40). In light of the reconsideration motion, the Court stayed the deadlines for Defendants to provide Plaintiff with information concerning the employees in the conditionally certified collective and for Plaintiff to disseminate notice to the putative collective. (Dkt. #42). The parties also agreed to toll the statute of limitations pending Defendants' motion for reconsideration. (*Id.*).

By oral decision on June 24, 2021, the Court denied Defendants' motion for reconsideration. (*See* Dkt. #48 (transcript)). At the conclusion of its oral decision, the Court discussed with the parties their views on how to proceed in light of the Second Circuit's decision in *Whiteside v. Hover-Davis Inc.*, 995 F.3d 315 (2d Cir. 2021), which addressed the pleading standard for the three-year willfulness exception to the FLSA's general two-year statute of limitations. (*Id.* at 8-18). Given the issuance of this decision, which the Court deemed an intervening change in law, the Court granted Plaintiff leave to file an amended complaint. (Dkt. #46). The Court also extended the stay of the deadlines for distribution of notice to the opt-in class and tolled the statute of limitations for the putative collective action pending resolution of Defendants' previewed motion to dismiss. (*Id.*).

Plaintiff filed the Amended Complaint on July 9, 2021. (Dkt. #47). On June 23, 2021, Defendants filed a pre-motion letter indicating their intent to move to dismiss the Amended Complaint. (Dkt. #50). [3] Four days later, the Court issued an endorsement granting Defendants leave to file their motion to dismiss, setting a briefing schedule, and reaffirming the stay of the deadlines for distribution of notice to the collective. (Dkt. #51). On September 13, 2021, Defendants filed their motion to dismiss the Amended Complaint. (Dkt. #54-56). Plaintiff filed his opposition papers one month later, on October 13, 2021. (Dkt. #57-58). On October 27, 2021, Defendants filed their reply brief. (Dkt. #59). Since the close of formal briefing, the parties have each submitted a notice of supplemental authority, bringing to the Court's attention recent decisions out of the United States District Court for the Eastern District of New York bearing on the issues in this case. (Dkt. #67, 68). Plaintiff alerted the Court to an order issued by United States District Judge Rachel P. Kovner denying a defendant's request to certify an order for interlocutory appeal on the basis that there was not ground for substantial difference of opinion regarding either (i) the existence of a private right of action under NYLL § 191 or (ii) whether a plaintiff has standing to bring a claim under the NYLL based on a temporary deprivation of money. (Dkt. #67). Defendants apprised the Court of a decision issued by United States District Judge Joanna Seybert holding that a plaintiff had not adequately alleged standing to bring a claim based on untimely payment of wages. (Dkt. #68). The Court accepts these submissions and deems Defendants' motion to be fully briefed. [4]

### DISCUSSION

**\*4** Of Plaintiff's six causes of action, Defendants target only one for dismissal on this motion — Plaintiff's claim for failure to pay timely wages pursuant to NYLL § 191. Defendants offer three distinct arguments for dismissal of this claim: (i) Plaintiff lacks Article III standing to bring his timely payment claim because he received all of the wages to which he is entitled; (ii) Plaintiff's claim is preempted by both Section 301 of the Labor Management Relations Act (the "LMRA") and the National Labor Relations Act (the "NLRA"); and (iii) Section 191 does not create a private right of action. As discussed below, none of Defendants' arguments carries the day.

### A. The Court Denies Defendants' Motion to Dismiss for Lack of Article III Standing

At the outset, the Court notes that Defendants invoke only Federal Rule of Civil Procedure 12(b)(6) as the basis for their motion to dismiss. (*See* Def. Br. 6). However, courts have found that "Federal Rule of Civil Procedure 12(b)(1) is the proper procedural vehicle for a motion to dismiss for lack of Article III standing rather than Rule 12(b)(6) because it concerns 'the authority of a federal court to exercise jurisdiction.' " *Tescher* v. *Experian Info. Sols., Inc.*, No. 21 Civ. 2266 (PMH), 2022 WL 564048, at \*2 (S.D.N.Y. Feb. 23, 2022) (quoting *Artists Rts. Enf't Corp.* v. *Est. of Robinson*, No. 15 Civ. 9878 (ER), 2018 WL 1617890, at \*3 (S.D.N.Y. Mar. 29, 2018)). Because the Court has an independent obligation to apply the correct legal standard with respect to its jurisdiction, it will construe Defendants' motion to dismiss for lack of Article III standing as one brought under Rule 12(b)(1). *See Matter of Trs. Established Under the Pooling & Servicing Agreements Relating to the Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F. Supp. 3d 441, 446 (S.D.N.Y. 2019).

**1. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Daly* v. *Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)). To bring a case or controversy within the subject matter jurisdiction of federal courts, a plaintiff must have standing under Article III of the Constitution, which requires a "personal stake in the case." *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal quotation marks and citation omitted).

The Second Circuit has explained that "[a] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter* v. *HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). With the instant motion, Defendants mount a facial challenge to the Court's subject matter jurisdiction, because their arguments concerning standing are "based solely on the allegations of the complaint or the complaint and exhibits attached to it."

*Carter*, 822 F.3d at 56. A plaintiff opposing such a motion bears "no evidentiary burden." *Id.* Rather, on such a facial motion challenging standing, a court's task is to determine whether the pleadings allege "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (alteration in original) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). In ruling on a facial Rule 12(b)(1) motion, the court must accept as true all material allegations contained in the complaint and construe the pleadings in favor of the plaintiff. *See id.* at 57.

### 2. Constitutional Standing

**\*5** Article III standing requires a plaintiff to show "[i] an injury in fact, [ii] a causal connection between that injury and the conduct at issue, and [iii] a likelihood that the injury will be redressed by a favorable decision." *Maddox* v. *Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted)). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Fac.* v. *N.Y. Univ.*, 11 F.4th 68, 76 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 561). Defendants' motion addresses only the first element — the existence of a cognizable injury in fact — and thus the Court focuses its analysis on that element. (Def. Br. 6-10). [5]

"To demonstrate injury in fact, a plaintiff must show the invasion of a [i] legally protected interest that is [ii] concrete and [iii] particularized and [iv] actual or imminent, not conjectural or hypothetical." *Maddox*, 19 F.4th at 62 (quoting *Strubel* v. *Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). In its recent decision in *TransUnion LLC* v. *Ramirez*, the Supreme Court expounded on Article III's requirement that a "plaintiff's injury in fact be 'concrete' — that is, 'real, and not abstract.' " 141 S. Ct. at 2204 (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340 (2016)). "Central to assessing concreteness," the Supreme Court explained, "is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms[.]" *Id.* at 2200. Tangible harms, including "[m]onetary harms," are among those that "readily qualify as concrete injuries under Article III." *Id.* at 2204.

With regard to injuries arising out of a defendant's violation of a statute, the Supreme Court explained that courts may not assume that the existence of a statutory prohibition or obligation automatically elevates that prohibition or obligation to a harm that is concrete under Article III. *See TransUnion*, 141 S. Ct. at 2204-05. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 2205. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis omitted); *see also Harty* v. *W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself.").

### 3. Plaintiff Has Standing to Bring His Timely Payment Claim

Defendants argue that Plaintiff lacks standing to bring his claim for untimely payment of wages pursuant to NYLL § 191 because he has failed to allege what injury in fact he suffered from being paid on a bi-weekly basis apart from Defendants' alleged technical violation of the statute. (Def. Br. 6-10). Plaintiff argues that Defendants' position ignores the case law establishing that temporary deprivation of money to which a plaintiff is entitled constitutes a tangible injury that is cognizable under Article III. (Pl. Opp. 3-5). Because Plaintiff has alleged sufficient facts to suggest that he suffered financial harm when Defendants withheld money to which he was legally entitled, the Court concludes that Plaintiff has standing to bring his claim under Section 191.

**\*6** Section 191(1)(a) states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned[,]" unless the Commissioner of the New York State Department of Labor has "authorized" the employer to pay the worker less frequently. N.Y. Lab. Law § 191(1)(a). In the Amended Complaint, Plaintiff alleges that he performed manual tasks as an employee of Defendants and that Defendants compensated him on a bi-weekly basis. (Am. Compl. ¶¶ 63-66). Assuming the truth of his well-pleaded allegations, Defendants paid half of all Plaintiff's wages a week after the statutory deadline imposed by the NYLL.

Irrespective of the fact that Plaintiff ultimately received the entire sum of wages he was owed, this delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III. This is because the "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) (quoting Porsch v. LLR, Inc., 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)). As the Seventh Circuit explained, albeit in a different context, "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money." Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 457 (7th Cir. 2010); see also Porsch, 380 F. Supp. 3d at 424 ("It is a basic princip[le] of economics and accounting that 'a dollar today is worth more than a dollar tomorrow.' "). This temporary withholding of money to which Plaintiff was owed — an injury Plaintiff purportedly suffered every pay period he worked for Defendants — is a concrete, economic harm. Framed differently, each time Plaintiff received late compensation for the work he performed, Defendants underpaid him for the work he performed. See Vega v. CM & Assocs. Constr. Mgmt., LLC, 107 N.Y.S.3d 286, 288 (1st Dep't 2019) ("[T]he term underpayment encompasses the instances where an employer violates the frequency requirements of [S]ection 191(1)(a) but pays all wages due before the commencement of an action."). That Defendants' delay was only a week or that the economic harm may amount to a relatively meager sum in absolute terms does not relegate Plaintiff's injury in fact beyond the bounds of Article III. See Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.' ").

Nothing in *TransUnion* demands that this Court reconstrue the nature of the financial injury that Plaintiff allegedly suffered as a result of Defendants' untimely payment of his wages. To the contrary, *TransUnion* affirmed that "certain harms readily qualify as concrete injuries under Article III," the most obvious being "traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 141 S. Ct. at 2204. The Supreme Court made clear that "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* Plaintiff has alleged just this type of monetary injury as a result of Defendants' withholding of his wages beyond when they were legally obligated to pay him. Even without any additional facts about how he would have used his wages if he had received them in a timely fashion, Plaintiff has alleged a concrete harm resulting from Defendants' alleged violation of Section 191. See Van v. LLR, Inc., 962 F.3d 1160, 1161 (9th Cir. 2020) (holding, in the context of taxes that were wrongfully assessed but ultimately refunded, that "[t]he inability to have and use money to which a party is entitled is a concrete injury" (internal quotation marks omitted) (quoting MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1318 (11th Cir. 2019))).

**\*7** In the wake of *TransUnion*, at least one court in the Second Circuit has held that a plaintiff must allege facts beyond a bare violation of Section 191 to give rise to a concrete injury in fact. See Rosario v. Icon Burger Acquisition LLC, No. 21 Civ. 4313 (JS) (ST), 2022 WL 198503 (E.D.N.Y. Jan. 21, 2022). In that case, the court held that "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." *Id.* at *3. This Court does not read *TransUnion* or any other binding precedent to require a plaintiff to specify how he intended to take advantage of the time value of his wages if they had not been improperly withheld for a period of time. The factual allegations of the Amended Complaint establish that Plaintiff here was deprived of the time value of the money that Defendants illegally delayed. As such, Plaintiff has suffered an injury in fact for which he may seek redress in federal court, regardless of his intentions with respect to the delayed funds. See Van, 962 F.3d at 1164-65 (reasoning that loss of use of money to which one is entitled is an injury that "is actual, concrete, and particularized[,]" and that "[i]nterest is simply a way of measuring and remedying [the plaintiff's] injury, not the injury itself").

Therefore, Plaintiff has sufficiently alleged that he suffered a concrete injury in fact, which gives him standing to bring his claim for untimely payment of wages. Accordingly, the Court denies Defendants' motion to dismiss this claim for lack of Article III standing.

**B. The Court Denies Defendants' Motion to Dismiss Based on Federal Labor Law Preemption Principles**
Defendants separately move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Section 191 claim as preempted by both Section 301 of the LMRA and the NLRA. (Def. Br. 11-18). Both of these preemption arguments rest on the premise that Defendants' practice of compensating hourly workers on a bi-weekly basis was so longstanding and consistent that it was incorporated into the CBAs. (*Id.*

at 17-18). Beginning with the LMRA, Defendants argue that because Section 301 preempts "state-law actions that require interpretation of the terms of a CBA[,]" *McLean* v. *Garage Mgmt. Corp.*, No. 10 Civ. 3950 (DLC), 2011 WL 1143003, at *2 (S.D.N.Y. Mar. 29, 2011), Plaintiff's challenge to the bi-weekly payment schedule — a term allegedly implied in the CBAs — is preempted by the LMRA. (Def. Br. 11-14).

Defendants additionally invoke the *Garmon* preemption doctrine, which originates from the Supreme Court's decision in *San Diego Building Trades Council, Millmen's Union, Local 2020* v. *Garmon*, 359 U.S. 236 (1959), in asserting that Plaintiff's Section 191 claim is preempted by the NLRA. In *Garmon*, the Supreme Court held that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [Section] 7 of the [NLRA], or constitute an unfair labor practice under [Section] 8, due regard for the federal enactment requires that state jurisdiction must yield." *Id.* at 244. Thus, *Garmon* preemption applies, and the National Labor Relations Board (the "NRLB") has exclusive jurisdiction, "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the [NLRA]." *Id.* at 245.[6]

In this case, Defendants argue that Plaintiff's Section 191 claim is preempted by the NLRA because it threatens to usurp the Union's role as the exclusive bargaining representative of hourly employees at Defendants' stores by effectively forcing the Union to acquiesce to alteration of the pay frequency term implied in the CBAs. (Def. Br. 14-18; Def. Reply 3-6). Because a union's failure to engage in good-faith bargaining with an employer prior to modifying a term of a CBA constitutes an unlawful employment practice under Section 8 of the NLRA, Defendants contend that Plaintiff's claim must be adjudicated by the NLRB. (*Id.*).

**\*8** As the Court will explain, Defendants' preemption arguments rest on a fundamental flaw that makes them procedurally premature. In brief, Defendants' preemption claims under the LMRA and NLRA depend entirely on the CBAs, which are documents the Court is legally precluded from considering at this stage of the proceedings. Because the Court may not consider the documents at the heart of these preemption claims, Defendants' motion to dismiss Plaintiff's timely payment claim based on federal labor law preemption principles must be denied.

**1. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Allco Fin. Ltd.* v. *Klee*, 861 F.3d 82, 94-95 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks, alterations, and citation omitted); *see also Hamilton* v. *Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021) (explaining that on a motion to dismiss courts "accept as true all factual allegations and draw from them all reasonable inferences; but ... are not required to credit conclusory allegations or legal conclusions couched as factual allegations") (internal quotation marks and citations omitted).

**2. The Court May Not Consider the CBAs at This Stage of the Proceedings**

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (citation omitted); *see also Goel*, 820 F.3d at 559 ("A document is integral to the complaint where the complaint relies heavily upon its terms and effect." (internal quotation marks and citations omitted)).

The CBAs fall into none of the categories that would permit the Court to consider them on this motion. They were neither attached to the Amended Complaint nor incorporated therein by reference; nor are the CBAs "integral" to the Amended Complaint, because Plaintiff's pleading does not "rel[y] heavily upon [their] terms and effect." *Goel*, 820 F.3d at 559. In fact, the Amended Complaint makes no reference at all, either explicit or implicit, to the CBAs. Therefore, the Court is prohibited from considering the CBAs on this motion. *See, e.g.*, *Silver* v. *Entergy Nuclear Operations, Inc.*, No. 15 Civ. 1792 (VB), 2015 WL 7430869, at *1 (S.D.N.Y. Nov. 19, 2015) (declining to consider a CBA on a motion to dismiss where the document was not part of the pleadings, incorporated by reference therein, or integral to the complaint); *Kaye* v. *Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 419 (S.D.N.Y. 2013) ("[I]t is inappropriate for a court to consider a CBA in evaluating a motion to dismiss claims not dependent on the CBA and where no facts about the CBA are alleged in a plaintiff's complaint.").

**\*9**  The Second Circuit's decision in *Nakahata* v. *New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013), is directly on point. In that case, which concerned underpayment in the healthcare industry, the district court dismissed the plaintiffs' common-law claims in part because "they were preempted by collective bargaining agreements," even though "[n]o CBAs were pled or attached to the complaints[.]" *Id.* at 202. The Second Circuit reversed, holding that because "dismissal of those [common-law] claims relied on the existence of a collective bargaining agreement, which was not included with the pleadings and could not be considered on a motion to dismiss[,]" dismissal was "inappropriate." *Id.* at 203. In arriving at this conclusion, the Second Circuit rejected the notion "that Plaintiffs were responsible for pleading the CBAs in the complaints." *Id.* Rather, the Second Circuit reasoned that "[i]t is a defendant's responsibility to raise preemption by the CBA as a defense, but ... a motion addressed to the adequacy of the pleadings is not necessarily the proper place for preemption to be decided." *Id.*

Defendants cite two cases to suggest that the Court should take judicial notice of the CBAs. (Def. Br. 6 n.3 (citing *Cox* v. *Perfect Bldg. Maint. Corp.*, No. 16 Civ. 7474 (VEC), 2017 WL 3049547 (S.D.N.Y. July 18, 2017), and *Granados* v. *Harvard Maint., Inc.*, No. 05 Civ. 5489 (NRB), 2006 WL 435731 (S.D.N.Y. Feb. 22, 2006))). Neither case, however, convinces the Court that it would be appropriate to consider these documents at the pleading stage in the face of extensive precedent to the contrary. Notably, the courts in both *Granados* and *Cox* took judicial notice of CBAs in assessing the enforceability of union-negotiated arbitration clauses, a context wholly distinct from the federal-law preemption arguments that Defendants present on this motion. *See Granados*, 2006 WL 435731, at *3-7 (finding arbitration clause in CBA unenforceable as to federal, state, and municipal statutory claims); *Cox*, 2017 WL 3049547, at *3-5 (finding CBA to contain "clear and unmistakable" waiver of judicial remedies and holding that arbitration award had *res judicata* effect on plaintiff's claims). Additionally, the defendant in *Granados* moved to dismiss plaintiff's claims in that case, in part, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), *see Granados*, 2006 WL 435731, at *1, on which types of motions "courts regularly consider matters outside the complaint," *Kaye*, 975 F. Supp. 2d at 419 (citing *State Emps. Bargaining Agent Coal.* v. *Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007)). Moreover, in *Cox*, the court also took judicial notice of an arbitration award in considering defendant's claim-preclusion argument, *see Cox*, 2017 WL 3049547, at *3, which decision finds greater support in the Second Circuit, *see Caldarera* v. *Int'l Longshoremen's Ass'n, Local 1,* 765 F. App'x 483, 485 n.2 (2d Cir. 2019) (summary order) (finding no error in district court's taking judicial notice of an arbitration award); *see also Purjes* v. *Plausteiner,* No. 15 Civ. 2515 (VEC), 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016) (collecting cases for the proposition that filings in arbitration proceedings are proper subjects of judicial notice). Therefore, the cases cited by Defendants fail to convince the Court that it is appropriate to take judicial notice of the CBAs on this motion.

Of course, the Court may consider the CBAs if it were to convert the instant motion to one for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d); *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (explaining that once presented with extra-pleading materials, Rule 12(b) allows a court to either "exclude[ ] the extrinsic documents" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56"). The Court declines to do so, as Defendants have made no such conversion request and adjudication of the preemption claims would require discovery into the existence of a satisfactorily-established past practice and the parties' history of operating under the CBAs. *See Kaye*, 975 F. Supp. 2d at 419 ("[T]he Court is disinclined to convert the motion [to dismiss into one for summary judgment] at this time, particularly because

consideration of how the Parties operated under the CBA would require discovery.").

 **\*10**  Defendants have argued that their alleged "past practice" of paying hourly employees on a bi-weekly basis was a term and condition of employment that became incorporated into the CBAs. (Def. Br. 16-18; Def. Reply 4-6). Despite Defendants' urging, the Court does not believe that Plaintiff's pleadings, alone, establish that this alleged past practice was sufficiently longstanding to become embedded in the CBAs. Thus, questions remain about the nature of this alleged past practice, when Defendants' began this practice, and whether Defendants implemented it at all of its retail locations. These are appropriate subjects of exploration during discovery. Furthermore, Section 191(1)(a), itself, provides an avenue for the Commissioner of Labor to authorize a payment schedule "in accordance with the agreed terms of employment, but not less frequently than semi-monthly." N.Y. Lab. Law § 191(1)(a). The record on this motion is devoid of any indication as to whether Defendants sought such authorization, which is relevant to whether Defendants' pay-frequency practices, in fact, violated Section 191.<sup>7</sup>

Accordingly, the Court declines to consider the CBAs on this motion and, therefore, must deny Defendants' motion to dismiss based on federal labor law preemption principles. *See* Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 66 (2d Cir. 2006) (affirming district court's decision to deny defendants' motion to dismiss as to "those claims for which 'preemption cannot be easily determined from the pleadings' ... with the understanding that the claims may ultimately prove to be preempted at a later stage of the litigation" (quoting *Abdu-Brisson* v. *Delta Airlines, Inc.*, 128 F.3d 77, 84 (2d Cir. 1997))).<sup>8</sup>

**C. The Court Denies Defendants' Motion to Dismiss for Lack of a Private Right of Action to Enforce NYLL § 191**

 **\*11**  Defendants' final argument for dismissal is that the NYLL does not provide for a private right of action to enforce the pay frequency rights outlined in Section 191. (Def. Br. 18-21). Defendants acknowledge the conflicting case law on this question and, in the absence of any definitive ruling by the Second Circuit or New York Court of Appeals, urge the Court to side with those courts that have declined to find a private right of action. (*Id.*). The Court agrees with Plaintiff that following the relevant case law from the New York State Appellate Division counsels in favor of finding a private right of action for a violation of Section 191(1)(a). (Pl. Opp. 13-16 (citing *Vega*, 107 N.Y.S.3d 286)).

Federal courts applying state law "are generally obliged to follow the state law decisions of state intermediate appellate courts ... in the absence of any contrary New York authority or other persuasive data establishing that the highest court of the state would decide otherwise." *Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Pentech Int'l, Inc.* v. *Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993)). As it pertains to the question of state law posed by the instant motion, courts in this Circuit have routinely found there to be a private right of action under Section 191(1)(a) pursuant to the First Department's decision in *Vega* v. *CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286. *See, e.g.*, *Mabe* v. *Wal-Mart Assocs., Inc.*, No. 20 Civ. 591 (TJM), 2022 WL 874311, at \*2-4 (N.D.N.Y. Mar. 24, 2022); *Caul*, 2021 WL 4407856, at \*2-4 (collecting cases); *Duverny* v. *Hercules Med. P.C.*, No. 18 Civ. 7652 (DLC), 2020 WL 1033048, at \*5 (S.D.N.Y. Mar. 3, 2020); *Scott* v. *Whole Foods Mkt. Grp., Inc.*, No. 18 Civ. 86 (SJF) (AKT), 2020 WL 9814095, at \*3 (E.D.N.Y. Feb. 5, 2020); *Sorto* v. *Diversified Maint. Sys., LLC*, No. 20 Civ. 1302 (JS) (SIL), 2020 WL 7693108, at \*2-3 (E.D.N.Y. Dec. 28, 2020).

In *Vega*, the First Department found that NYLL § 198(1-a), which permits an "employee to recover the full amount of any underpayment" of wages, expressly provides a private right of action for a violation of Section 191. *Vega*, 107 N.Y.S.3d at 288. This is so, even if the employer has paid the wages that were due before the commencement of the action, because an "underpayment" for purposes of Section 198(1-a) occurs "[t]he moment that an employer fail[s] to pay wages in compliance with [S]ection 191(1)(a)." *Id*. While an employer who eventually pays the underpaid wages can "assert an affirmative defense" based on the eventual payment, the First Department concluded that an employee could still seek "statutory remedies," including liquidated damages for a violation of Section 191. *Id*. The First Department analogized the liquidated damages provision of the NYLL to the FLSA's liquidated damages provision, which the Supreme Court has interpreted to allow an employee to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." *Id*. (citing *Brooklyn Sav. Bank* v. *O'Neil*, 324 U.S. 697, 707 (1945)).

Defendants have presented no persuasive reason why this Court should depart from the myriad decisions in this Circuit that have followed *Vega* in finding a private right of action to enforce Section 191. Rather, Defendants attack the reasoning of *Vega*, relying exclusively on pre-*Vega* decisions that do not indicate to the Court that the New York Court of Appeals is poised to revisit the First Department's decision. (Def. Br. 18-21; Def. Reply 7-10). Because Defendants offer no "persuasive evidence that the state's highest court would reach a different conclusion" than the First Department did in *Vega*, the Court is "bound to apply the law as interpreted by" the intermediate appellate court. *V.S.* v. *Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (citing *Pahuta* v. *Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)).

**\*12** Thus, applying *Vega*, the Court finds that the NYLL affords a private right of action to enforce the late payment of wages. It therefore denies Defendants' motion to dismiss for lack of a private right of action under Section 191.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is DENIED. Accordingly, Defendants are ORDERED to file their answer to the Amended Complaint **on or before August 31, 2022**. The parties are ORDERED to file a joint status letter regarding the next steps in this case and proposed case management plan **on or before September 9, 2022**.

Furthermore, in light of the Court's decision on this motion, the stay of the parties' deadlines concerning the distribution of the notice of pendency to the putative collective members in this action is hereby LIFTED. With respect to the notice-related deadlines, it is the Court's understanding that the parties have agreed to the joint retention of an independent administrator. (Dkt. #41).

Thus, to the extent they have not already done so, the parties are ORDERED to meet and confer regarding the language of the proposed notices. Plaintiff shall file the revised proposed notices **on or before August 31, 2022**. If Defendants still have objections, they may file objections within seven days from the date of Plaintiff's submission.

Defendants are ORDERED to provide Plaintiff, in a computer-readable format, with the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for employees within the putative class **on or before August 31, 2022**.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 3285275

---

### Footnotes

1    This Opinion draws its facts from the Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl." (Dkt. #47)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. The Court additionally references the materials related to Zara's collective bargaining efforts that Defendants have submitted in connection with this motion, all of which are extraneous to the Amended Complaint. (*See* Dkt. #56 ("Freedberg Decl.")). The Court discusses the propriety of considering these materials *infra* Section B.2.

     For convenience, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #55); to Plaintiff's memorandum of law in opposition to the motion as "Pl. Opp." (Dkt. #57); and to Defendants' reply memorandum as "Def. Reply" (Dkt. #59).

2    Each CBA was negotiated by a bargaining unit comprising all of Defendants' retail stores within a given location. (*See* Freedberg Decl., Ex. A (Manhattan); *id.*, Ex. B (Long Island); *id.*, Ex. C (Outer Boroughs); *id.*,

  Ex. D (Rockland and Westchester Counties); *id.*, Ex. E (Hudson Yards)). While each CBA has a different effective date, spanning the years 2017 to 2019, all of them were extended through May 31, 2021. (*Id.*, Ex. F).

  The CBAs are substantively identical in all respects pertinent to the instant motion. Thus, for convenience, the Court cites to the CBAs using the convention "[Location] CBA" and notes that a reference to one CBA pertains to all of the CBAs, unless otherwise specified.

3  In this letter, Defendants acknowledged that they believed that Plaintiff satisfied his burden of pleading willfulness with particularity under *Whiteside* v. *Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021). (Dkt. #50 at 1).

4  On October 27, 2021, the Union sought leave to file an amicus brief in support of Defendants' motion to dismiss. (Dkt. #60). However, the Union withdrew its request and no longer intends to make this filing. (Dkt. #66).

5  There is no question that Plaintiff's allegations satisfy Article III's causation and redressability requirements. Any financial harm that Plaintiff suffered as a result of his untimely receipt of wages would be "fairly traceable" to Defendants' compensation practices. Further, if Plaintiff ultimately succeeds on the merits of this claim, such financial harm would be redressable by an award of damages.

6  Section 7 of the NLRA protects the right of employees to engage in concerted activity or to refrain from such activity. *See* 29 U.S.C. § 157. Meanwhile, Section 8 declares certain practices by employers and employees to be prohibited unfair labor practices. *See id.* § 158.

7  Apart from its conclusion that it may not consider the CBAs on this motion, the Court has reason for skepticism regarding Defendants' LMRA preemption argument. This is primarily because, as pleaded, Plaintiff's untimely-payment claim appears to implicate only rights and obligations created by Section 191(1)(a), wholly distinct from any rights to which Plaintiff was entitled under the CBAs. A state-law claim is preempted by Section 301(a) of the LMRA if the claim is either (i) "founded directly on rights created by collective-bargaining agreements," or (ii) "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 394; *see also Vera* v. *Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003). Consistent with this principle, "if a state prescribes rules or establishes rights and obligations that are *independent of a labor contract*, actions to enforce such independent rules or rights would not be preempted by section 301." *Vera*, 335 F.3d at 115 (emphasis added). Put differently, Section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 212 (1985). Likewise, "the need merely to 'consult' or 'refer' to the CBA does not trigger preemption." *Cooper Union Fed'n of Coll. Teachers, Local 2163* v. *Cooper Union for the Advancement of Sci. & Art*, No. 18 Civ. 5891 (VEC), 2019 WL 121000, at *2 (S.D.N.Y. Jan. 7, 2019) (citing *Livadas* v. *Bradshaw*, 512 U.S. 107, 124 (1994)).

  On its face, Plaintiff's Section 191 claim requires the Court to determine whether Defendants adhered to their obligations to pay manual workers within seven calendar days after the end of the week in which the workers rendered compensable services. (Am. Compl. ¶¶ 80-82). If Defendants received authorization from the Commissioner of Labor for an alternative arrangement, Plaintiff's claim would stand to fail because of a misapprehension of the NYLL, and not any provision of an operative CBA. So framed, the claim does not appear to fall within any of the categories of claims that are preempted by Section 301.

8  The Court also expresses doubt regarding Defendants' claim of *Garmon* preemption, which it understands to be that Section 191 "mandates that the Union waive its exclusive bargaining rights" with respect to the frequency of pay of covered employees. (Def. Br. 18; *see also* Def. Reply 4-6). As noted above, a state statute is preempted under *Garmon* if it "regulate[s] activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Healthcare Ass'n of N.Y. State, Inc.* v. *Pataki*, 471 F.3d 87, 95 (2d Cir. 2006) (internal quotation

marks omitted) (quoting *Wis. Dep't of Indus., Labor & Human Relations* v. *Gould Inc.*, 475 U.S. 282, 286 (1986)). But Section 191 does not regulate such activity.

As the Supreme Court has explained, "[t]he NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." *Metro. Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 753 (1985) (citation omitted). To this end, "although states are precluded from regulating the bargaining process, states have traditionally possessed broad authority under their police powers to regulate the employment relationship, and the substantive labor standards that they enact set a baseline for employment negotiations." *Ass'n of Car Wash Owners Inc.* v. *City of New York*, 911 F.3d 74, 82 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Concerned Home Care Providers, Inc.* v. *Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015)). "States and localities therefore remain free to set minimum labor standards that affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Rest. L. Ctr.* v. *City of New York*, — F. Supp. 3d —, No. 21 Civ. 4801 (DLC), 2022 WL 409190, at *5 (S.D.N.Y. Feb. 10, 2022) (internal quotation marks omitted).

"Unlike the NLRA," Section 191 is not "designed to encourage or discourage employees in the promotion of their interests collectively." *Metro. Life Ins. Co.*, 471 U.S. at 755. While Section 191's rules governing pay frequency "restrict[ ] the terms over which employers and employees may negotiate, 'the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of preemption.' " *Concerned Home Care Providers*, 783 F.3d at 85 (quoting *Fort Halifax Packing Co.* v. *Coyne*, 482 U.S. 1, 21 (1987)). Thus, if Defendants intend to revive their NLRA preemption argument at a later stage in the proceedings, it will be incumbent on them to explain more fully how a Union's acquiescence to a past practice that may have been prohibited by state law when it was implemented can: (i) become implied in a preexisting CBA and (ii) force a labor organization to engage in an unfair labor practice when a plaintiff pursues judicial recourse for an employer's violation of that state law.

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.